UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,          ) | |
|                                  ) | |
|        Plaintiff,                 ) | |
|                                  ) | |
|        -v-                         ) | No. 08 C 237 |
|                                  ) | Hon. John Darrah |
| FUNDS IN THE AMOUNT OF $101,999.78  ) | |
| *et al.*,                                    ) | |
|                                  ) | |
|        Defendants.              ) | |

## CLAIMANTS MOTION
## FOR JUDGMENT ON THE PLEADINGS

This civil forfeiture action presumes that 26 U.S.C. § 5324 (the anti-structuring statute) literally requires a person to accumulate his cash receipts until they reach $10,000, and then make a deposit in at least that amount so that the bank will file a required Currency Transaction Report (CTR). No such requirement exists, and therefore judgment should be entered in favor of the claimants on the pleadings.

### Standards

Federal Rule 12(c) allows a party to file for judgment on the pleadings after the plaintiff has filed his complaint and the defendants, in this case the claimants, have filed their answer. *McDonnell v. Iovino*, 2006 U.S. Dist. LEXIS 53492 (N.D.Il. 2006) at *2, *citing N. Ind. Gun & Outdoors Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). In deciding the motion the court applies the same standards used to decide Rule 12(b)(6) motions to dismiss to the extent it raises procedural defects, *id.*, *citing Guise v. BMW Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004), or the standards for summary

judgment to the extent it is claiming there is no dispute of material facts. *See, e.g., United Air Lines, Inc. Retirement and Welfare Administration Committee v. Van Slyck*, 2008 U.S. Dist. LEXIS 22464 (N.D. Il. 2008) at *4, *citing Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). In the instant motion it probably makes no difference: for purposes of this motion claimants assume that the well-pled facts in the Complaint are true, but argue that if they are proven they do not set out a claim of illegal structuring. *See also United States v. One Million Seven Hundred Thousand Dollars*, 2008 U.S. Dist. LEXIS 14925 (E.D. Mich. 2008) at *16, *citing* 10A Wright, Miller & Kane, *Federal Practice & Procedure* § 2713 (3d ed. 1998) ( A motion for summary judgment based upon the pleadings alone is functionally equivalent to a motion to dismiss. ).

## The Complaint

The Complaint, construed favorably to the Government, alleges Pravinchandra Patel and Ushaben Patel ( the Patels ) own two motels, Hillside and Karavan. (Compl. ¶ 7). Hillside has 33 rental units, costing $47 a night; Karavan has 55 rental units, costing $55 a night. (*Id.*). Though not computed in the complaint, basic mathematics shows that if all the rooms are rented in a single night, Hillside takes in approximately $1551 a night and Karavan takes in approximately $3025 a night.

According to the Complaint, from March 2, 2004 through June 12, 2007, the Hillside Motel had an account at First Third Bank, into which cash deposits in the amount of $8000 were regularly made. (Compl. ¶ 9 and Ex. A, Summary of Deposits). From March 2, 2004 until November 15, 2005, Karavan Motel had account number 1413

at Mid America Bank, into which cash deposits in the amount of $8000 were regularly made; from November 17, 2005 until June 12, 2007, Karavan Motel had a second account at Mid America account, number 4656, into which cash deposits in the amount of $8000 were regularly made. (Compl. ¶ 12, and Ex. A, Summary of Deposits). Once claimants began using the number 4656 Mid America account to make these deposits, they ceased using the number 1413 account. (Compl., Ex. A, Summary of Deposits).

If the Patels had deposited the rental receipts from each motel daily, none of the deposits would have come close to $10,000. What has aroused the Government's suspicion, however, is that they did not deposit the approximately $1500 from Hillside and $3000 from Karavan (and this assumes the motels were filled to capacity) into their respective bank accounts the next day. Instead, the Patels allegedly waited several days, and then made deposits in increments of $8000. Because this sounds suspiciously like structuring in order to avoid the $10,000 CTR requirements, the Government has moved for forfeiture.[1]

## Judgment Should Be Entered for Claimants

Federal law requires banks to report cash transactions it receives from customers that exceed $10,000. 26 U.S.C. § 5313(a). Another law makes it illegal to structure

---

[1] It seems a safe inference that the deposits were made from each motel into their respective bank accounts, because there was no reason for one of the motels to take receipts from the other in order to keep them both below the reporting threshold. Filled to capacity, Karavan ($3025/night) would not accumulate over $10,000 until the fourth day; Hillside ($1551/night) would take even longer. On no day, therefore, could the two motels *together* have collected in excess of $10,000, much less each motel on its own.

financial transactions to evade currency reporting requirements.  26 U.S.C. § 5324.

Structuring is defined in the Code of Federal Regulations as follows:

> For purposes of section 103.53, a person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one of more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under section 103.22 of this part. *In any manner* includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000.  The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

31 C.F.R. 103.11(gg) (emphasis added). *See also* Compl. ¶ 6.

While the definition does not intend to encompass all possibilities, it significantly speaks of "the breaking down of a single sum of money exceeding $10,000 into smaller sums, ...."  This definition of structuring is the exact opposite to what the Government alleges happened here.  The Government alleges here that the Patels daily collected multiple sums of money that did *not* exceed $10,000.  Thus, they did not "break down" the single receipt of $10,000 into smaller sums in order to defeat the reporting requirements.

One indicia of illegal structuring is using multiple bank accounts.  The government understands this, and in paragraph 8 of its Complaint alleges as follows:

> A review of the bank records of the two businesses has shown that the Patels maintained multiple bank accounts in the names of the two motels, and made their cash deposits into these accounts as set forth below by depositing no greater than $8000 on any given day and by alternating deposits among the multiple motel bank accounts in order to avoid reporting requirements, and then transferring the cash deposits by check to brokerage accounts.

A review of the bank records of the two businesses, however, shows nothing of the kind. The attached records and the inferences drawn from them suggest that the claimants deposited the Hillside Motel receipts into one account at one bank (Fifth Third), and the Karavan Motel receipts into another bank (Mid America). True, at Mid America they used two different accounts, but not to make alternating deposits among the multiple bank accounts. The summary of deposits attached to the Complaint shows that the two bank accounts were not used at the same time: they used the first Mid America account from March 2004 through November 2005, and then switched and used a second account from November 2005 until the government attached it. (*See* Compl. Ex. A, Summary of Deposits) The fact that they did *not* use the two Mid America accounts to make deposits on the same or successive days in order to keep the total amounts below $10,000 is indication enough that these accounts were *not* used to violate the anti-structuring laws.

The anti-structuring statute aims to prevent persons from breaking down a large cash payment into small cash deposits in order to defeat bank reporting requirements. It does not exist to compel recipients of a smaller amounts of cash to hold onto their money until it reaches a threshold amount. Under the Government s theory, the Patels would have committed illegal structuring if they made the deposits every morning of the next day, for by making daily deposits they similarly would have defeated the reporting requirement. This case might be different if the claimants received more than $10,000 in a 24 hour period from Hillside and/or Karavan, but they did not: the most

they could have received, according to the Complaint, was between $1500 and $3000.

The Complaint cites no law that *required* the claimants to accumulate the fifteen hundred and three thousand dollars in daily receipts and make the deposits in $10,000 increments.  That would be a dangerous requirement, ordering citizens to go to the bank carrying $10,000 in cash, rather than smaller amounts.   Yet the Government would be describing an offense only if the law required people to accumulate their cash receipts in a drawer somewhere until they reached $10,000, and the law obviously does not say that.

This motion does not raise a factual issue as to the Claimants state of mind.  It makes no difference whether they  knew  that structuring was against the law or otherwise improper. *See, e.g., United States v. Dollar Bank Money Market Account No. 1591768456*, 980 F.2d 233 (3d Cir. 1992).  Regardless of whether they knew or not, the Complaint does not allege illegal structuring, because it does not allege that they  broke down  a single sum of money into smaller amounts in order to evade currency reporting requirements.  Many lawyers probably know of the reporting requirements, but no one would argue that they have to accumulate $3500 fees until they reach $10,000 and *then* make the deposit in order to comply with the statute, even if, to make the analogy stronger, they had reason to know additional fees were coming in over the next few days.

**CONCLUSION**

Accordingly, the Court should enter judgment in favor of the Claimants.

>Respectfully submitted,
>PRAVINCHANDRA PATEL, *et al.*,
>
>By:   /s/ Basrry A. Spevack
>      One of their attorneys

Barry A. Spevack
MONICO, PAVICH & SPEVACK
20 South Clark Street
Suite 700
Chicago, Illinois 60603
312-782-8500